UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80633-CIV-ROSENBERG/REINHART

MARGARET SCHULTZ, individually
and on behalf of a putative class,

        Plaintiff,

v.

AMERICAN AIRLINES, INC.,
a foreign, for-profit corporation,

        Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) (DE 7)

This matter is before the Court on the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court referred this matter to the undersigned for a Report and Recommendation. DE 24. The undersigned has reviewed the Complaint (DE 1), the Motion to Dismiss (DE 7), the Plaintiff's Response (DE 12), and the Defendant's Reply (DE 16). The matter is ripe for decision. For the reasons stated herein, the undersigned recommends that the District Court grant the Motion to Dismiss without prejudice.

## FACTS

The following constitute the material facts alleged in the Complaint.[1] All paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the Complaint.

---

[1] For purposes of this Motion, the Court accepts all well-pled factual allegations in the Complaint as true and evaluates all plausible inferences derived from those facts in favor of the Plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins.*

On May 25, 2017, Plaintiff Margaret Schultz ("Schultz") saw a flight listed for $197.00 on Defendant American Airlines, Inc.'s ("American"), website, aa.com (hereinafter "Initial Listing") ¶¶ 16, 21. Desiring to purchase a ticket and willing to pay that price, Schultz "clicked" on the relevant link and proceeded through a series of screens: (1) "Destination," (2) "Choose Departure Flight," (3) "Choose Return Flight," (4) "Trip Summary," (5) "Passengers," (6) "Choose Your Seat," and (7) "Review and Pay," entering information where requested. ¶ 37.

When Schultz reached the "Choose Your Seat" screen, she was prompted to select a specific seat or to otherwise elect to "[s]kip seats for all flights." Compl. Ex. 6. The "Choose Your Seat" screen allowed Schultz to view the availability of each seat, and, of those available, which were considered "Main Cabin Extra" or "Preferred," and therefore subject to purchase for an additional cost. *Id*. After finishing with the "Choose Your Seat" screen, Schultz proceeded to the final, "Review and Pay" screen. ¶ 37. Reviewing this screen and being satisfied that it included the information she had seen and selected on preceding screens—flight number, dates and locations of arrival and departure, and price—Schultz entered her credit card information and clicked "Pay now." ¶ 22. Immediately thereafter, American informed Schultz that it could not issue the ticket for $197.00 because the price had risen to $297.00. ¶ 27. Forced to start over, Schultz eventually purchased the ticket using frequent flier points. ¶ 31.

## LEGAL CLAIMS

Schultz filed this class action suit seeking damages for unjust enrichment and breach of contract arising out of American's failure to issue tickets for their advertised fares. Attached to the Complaint are screenshots of American's online booking process. Though not exact

---

*Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

replications, the screenshots are "substantially identical" to the screens displayed to Schultz. ¶¶ 39-41. The "Review and Pay" screen ("Payment Screen"), which is both attached to and incorporated in the Complaint, displays Schultz's selections, including flight number, airline name, departure and arrival airports, departure and arrival times, travel time, type of aircraft, and class. ¶¶ 40-41. Schultz "warrants" that the incorporated Payment Screen is identical to the one she encountered, with the only exceptions being arrival and departure destinations and price. ¶ 40. Notably, the Complaint does not allege a difference as to seat selection between the "Review and Pay" screen Schultz observed and the Payment Screen incorporated in the Complaint. ¶ 40. Instead of listing a specific seat number for Schultz, the incorporated Payment Screen includes a directive to "Choose seats." Compl. Ex. 7.

American filed the instant Motion on May 21, 2018, moving for dismissal of Schultz's Complaint, and raising two arguments in support thereof: (1) that the Airline Deregulation Act ("ADA") preempts the claims, and (2) that the Complaint fails to plead sufficient facts to establish plausible claims for breach of contract and unjust enrichment. Schultz agrees that the unjust enrichment claim fails to state a claim and should be dismissed. The Court therefore recommends dismissal of the unjust enrichment claim without addressing its merits. For the reasons discussed below, the Court also recommends dismissal of the breach of contract claim.

## DISCUSSION

1. **Motion to Dismiss Standard**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); see also *Am. Dental Assoc. v. Cigna Corp*., 605 F.3d 1283, 1288-90 (11th Cir. 2010).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "Where the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1341 (S.D. Fla. 2010) (J. Dimitrouleas); *see also Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1354 n. 2 (S.D. Fla. 2012) (J. Cohn) (noting that "when there is a conflict between a pleading and an exhibit to a pleading, the exhibit controls").

   2.   **Breach of Contract**

To succeed on a breach of contract claim, a plaintiff must prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *De La Flor v. Ritz-Carlton Hotel Co., L.L.C.*, No. 12-23689, 2013 WL 1874618, at *4 (S.D. Fla. 2013) (J. Huck) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). "[W]hether a valid contract exists is a threshold question of law that may be properly decided

by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (citing *Acumen Constr. Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. Dist. Ct. App. 1993)). A complaint seeking to establish the existence of a contract must plead: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of essential terms." *Kolodziej*, 774 F.3d at 740. A plaintiff thus cannot prevail on a breach of contract claim without first alleging the existence of an offer. "'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *De La Flor*, 2013 WL 1874618, at *4 (citing Restatement (Second) of Contracts § 24 (1981)).

It is well-established that, absent limited exceptions, advertisements do not constitute offers. *See Armour Group, Inc. v. Labock*, No. 11-61991, 2012 WL 12837289, at *7 (S.D. Fla. 2012) (J. Dimitrouleas) (explaining that "[u]nder contract law, an advertisement is usually not an offer, but rather a solicitation to bargain"); *see also Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999) (applying Florida law and recognizing that "[t]he general rule is that an advertisement does not constitute an offer"). To withstand dismissal, a breach of contract claim must allege sufficient facts to overcome the presumption that an advertisement is not an offer. *Mesaros v. U.S.*, 845 F.2d 1576, 1580 (Fed. Cir. 1988) (cautioning that "[t]he great weight of authority is against" a party seeking to establish the existence of an offer based on the terms of an advertisement). Absent such presumption, an "advertiser could be bound by an excessive number of contracts requiring delivery of goods far in excess of amounts available." *Id.* at 1581; *see also Leonard*, 88 F. Supp. 2d at 124 ("A customer would not usually have reason to believe that the shopkeeper intended exposure to the risk of a multitude of acceptances resulting in a number of contracts exceeding the shopkeeper's inventory") (internal quotations omitted).

"An advertisement is not transformed into an enforceable offer merely by a potential offeree's expression of willingness to accept the offer through, among other means, completion of an order form." *Leonard*, 88 F. Supp. 2d at 123. Instead, "whether an offer has been made depends on the objective reasonableness of the alleged offeree's belief that the advertisement or solicitation was intended as an offer." *Mesaros*, 845 F.2d at 1581; *see also Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1139 (Fla. Dist. Ct. App. 1989) ("The test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant"). It is generally considered unreasonable for a person to believe that an advertisement is an offer. *Mesaros*, 845 F.2d at 1581.

The presumption that an advertisement is not an offer can be overcome if the advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation." *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 86 N.W.2d 689, 691 (Minn. 1957); *see also Labock*, 2012 WL 12837289, at *7 (observing that "[i]t is of course possible to make an offer by an advertisement directed to the general public, but there must ordinarily be some language of commitment or some invitation to take action without further communication") (internal quotations and citations omitted). Turning to the instant Complaint, Schultz does not dispute that the Initial Listings on Defendant's website are advertisements addressed to the public. *See* ¶ 18 (alleging that "in posting this offer, American *announced to all potential customers* searching for flights on aa.com from DCA to MIA, including Plaintiff, that they could accept American's offer and purchase this specific service") (emphasis added). Instead, the dispute between the parties centers on whether the fares advertised on American's website are offers or invitations for offers.

Schultz contests American's characterization of its Initial Listings as invitations for offers,

citing to *Lefkowitz* to support her position. In *Lefkowitz*, the plaintiff brought suit for breach of contract stemming from the defendant's refusal to sell him a coat, despite having advertised for sale in a newspaper "3 Brand New Fur Coats Worth [sic] $100.00" for "$1" to the "First Come First Served." *Lefkowitz*, 86 N.W.2d at 690. The court in *Lefkowitz* explained that where an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract." *Id*. at 691. Applying that principle to the facts before it, the court concluded that the defendant's advertisement constituted an offer because its terms were detailed and specific. *Id*. The court held that the defendant was obligated to perform because the parties had an enforceable contract, the terms of which had been fulfilled. *Id*. at 192. (reasoning that "[t]he plaintiff having successfully managed to be the first one to appear at the seller's place of business to be served, as requested by the advertisement, and having offered the stated purchase price of the article, he was entitled to performance on the part of the defendant"). Analogizing to *Lefkowitz*, Schultz concludes that the advertised fare she selected was sufficiently detailed to constitute an offer.

As an initial matter, it is difficult to discern from the Complaint precisely what the alleged offer is—the Initial Listing that caused Schultz to begin the booking process, or the Payment Screen that concluded it. On the one hand, the Complaint alleges that the Initial Listing constitutes the offer, asserting that Schultz saw the offer and *then* entered her biographical and payment information on the subsequent screens. ¶ 21. However, the Complaint also refers to the Payment Screen as the offer, averring that it is "substantially identical" to "the contract offer made by American to Plaintiff . . . that forms the basis of Plaintiff's breach-of-contract claim." ¶ 41. In defining the offer as the Payment Screen, the Complaint alleges, "[i]n plain and unequivocal language, American offered a completely delineated and specific service—airfare and all accompanying taxes and fees, including baggage and seat fees, from DCA to MIA, on an

identified aircraft, with an identified flight number, that was to leave DCA and land at MIA at a definite time on a definite date—for a clear and unmistakable price: $197." ¶ 17. Further supporting the inference that the Payment Screen is the offer is the allegation that it "created a reasonable expectation in Plaintiff, as an objectively reasonable consumer, that American had a willingness to enter into a contract with Plaintiff pursuant to [its] terms." ¶ 23; *see also De La Flor*, 2013 WL 1874618, at *4 (defining an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it").

Irrespective of whether the Complaint defines the offer as the Initial Listing or the Payment Screen, the result is the same. A reasonable person viewing the Initial Listing and incorporated Payment Screen would conclude that negotiations were ongoing such that additional manifestation of the parties' assent would be required. For example, the instruction to "choose seats" on the Initial Listing screen evinces the need for further communication regarding terms affecting price. Additionally, the Initial Listing cautions that a "fee may apply" based on a passenger's seat selection. A reasonable person would thus conclude that absent seat selection the price displayed on the Initial Listing Screen was neither definite nor certain. Moreover, the Complaint alleges that it is the Payment Screen that reflects the offer's terms. ¶ 58 (alleging that the Payment Screen displays the offer's essential terms: "[d]ate, time, distance, departure site, arrival site, seat number and location, baggage policies and price"); *see Mesaros*, 845 F.2d at 1581 ("[A] published price list is not an offer to sell the goods listed at the published prices.").

To the extent Schultz's position is that the terms provided on the Payment Screen constitute the offer, this argument also fails. An objectively, reasonable person viewing the incorporated Payment Screen would, as with the Initial Listing, conclude that the instruction to "Choose seats" requires further action. Although the Complaint alleges generally that Schultz was "allotted" an

"exact" seat, this allegation has no bearing on the relevant inquiry, which is whether a reasonable person would, while viewing the offer, believe that the terms were so definite and certain that negotiations had concluded. The instruction to "Choose seats" suggests that either Schultz had to select a seat or American had to assign her one. *See Labock*, 2012 WL 12837289, at *7 (determining that an online advertisement was not an offer, in part because "options" to customize the advertised product were available, "implying that negotiations are required prior to completing the deal"); *see also Leonard*, 88 F. Supp. 2d at 124 (observing that advertisements "are not ordinarily intended or understood as offers to sell . . . even though the terms of suggested bargains may be stated in some detail"). Finally, the Court is not required to accept as true the allegation that Schultz was allotted an exact seat because this allegation is refuted by the Payment Screen incorporated in the Complaint and "warranted" to replicate the terms of American's offer. Because the absence of a seat selection contemplates further action and renders total price uncertain, the "offer" fails to overcome the presumption that an advertisement is not an offer. The Court therefore recommends dismissal without prejudice of Schultz's breach of contract claim.

   3. **Preemption**

American argues that the ADA preempts Schultz's claims. "Preemption is the power of federal law to displace state law substantively." *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 18-20136, 2018 WL 1701969, at *5 (S.D. Fla. 2018) (J. Altonaga) (citing *Geddes v. Am. Airlines, Inc.*, 321 F. 3d 1349, 1352 (11th Cir 2003). "The ADA contains a preemption provision to 'ensure that the States would not undo federal regulation with regulation of their own.'" *Id*. (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). The ADA's preemption clause provides that "a State, political subdivision of a State, or political authority. . . may not enact or enforce a law, regulation, or other provision having the force and

effect of a law related to a price, route, or service of an air carrier. . . ." *Id*. (citing 49 U.S.C. § 41713(b)(1)).

Courts interpret the ADA's preemption clause as having broad reach. *See Morales*, 504 U.S. at 383. As the Supreme Court explained in *Morales*, the ADA preempts state enforcement actions having a connection with or reference to airline rates, routes, or services. *Id.* at 384. The ADA also preempts common law claims having a connection with rates, routes or services. *Northwest, Inc. v. Ginsburg*, 572 U.S. 273, 284 (2014) (stating that "the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can be by a state statute or regulation"). The Supreme Court has recognized an exception for breach of contract claims, which are exempt from preemption if they seek to enforce "privately ordered obligations" rather than "state-imposed obligations." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). The "distinction between what the State dictates and what the airline itself undertakes confines Courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233.

Here, the parties do not dispute that Schultz's claims relate "to a price, route, or service of an air carrier." *See Morales*, 504 U.S. at 389 ("Price advertising surely 'relates' to price."). Instead, the parties disagree as to whether Schultz's breach of contract claim seeks to enforce a voluntary commitment. In its Motion, American argues that the ADA preempts the breach of contract claim because Schultz is not seeking to enforce a voluntary agreement, but instead asking the Court "to create a new, enforceable state law right . . . to purchase a particular flight at a particular price once American advertises it on its website." American contends that Schultz's claim seeks to enforce an alleged commitment that could only exist through application of common law. American asserts that because the alleged contract arises from a state-imposed obligation rather than a self-imposed undertaking, it is preempted.

To support its position, American places great reliance on *Morales*. In *Morales*, the Supreme Court declined to enforce guidelines issued by the National Association of Attorneys General ("NAAG") regulating airfare advertising and requiring disclosure of terms, restrictions, and availability. *Morales*, 504 U.S. at 388. The Supreme Court reached this determination even though the NAAG guidelines did not create new law, but "merely explain[ed] in detail how existing state laws apply to airfare advertising and frequent flyer programs." *Id.*

American argues that *Morales* compels dismissal of Schultz's Complaint because both *Morales* and the instant action seek to impose on airlines an obligation to provide airfare for a particular price. Importantly, *Morales* did not involve a breach of contract claim—a claim which the Supreme Court has determined to be exempt from the ADA's preemption provision if seeking to enforce a voluntary commitment. *See Wolens*, 513 U.S. at 228 (holding that the ADA's preemption provision does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own"). The ADA does not preempt breach of contract claims because "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law." *Id.* Finally, American argues that enforcement of Schultz's claim would run afoul of Congress's intent in enacting the statute to "promote efficiency, innovation, and low prices in the airline industry through maximum reliance on competitive market forces and on actual and potential competition."

The Court agrees with American that as pleaded the Complaint does not state a claim for breach of contract sufficient to withstand preemption. However, because the Court is recommending dismissal without prejudice for Schultz to re-plead her claims, it is premature to

conclude that there are no circumstances under which Schultz could plausibly allege a claim for breach of contract, the resolution of which would not be preempted. *See Reva*, 2018 WL 1701969, at *6 (noting that preemption is an affirmative defense and that "[g]enerally, the existence of an affirmative defense will not support dismissal" unless the affirmative defense "clearly appears on the face of the complaint").

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the District Court GRANT the Motion to Dismiss without prejudice for Schultz to re-plead her claims.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 24th day of September, 2018, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE