UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80633-CIV-ROSENBERG/REINHART

MARGARET SCHULTZ,
individually and on behalf of a
putative class,

        Plaintiff,

v.

AMERICAN AIRLINES, INC.,
a foreign, for-profit corporation,

        Defendant.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) (DE 38)

This matter is before the Court on the Defendant's Motion to Dismiss Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court referred this matter to the undersigned for a Report and Recommendation. DE 49. The undersigned has reviewed the operative Complaint (DE 59)[1], the Motion to Dismiss (DE 38), the Plaintiff's Response (DE 42), and the Defendant's Reply (DE 45). The undersigned held a hearing on the Motion to Dismiss on January 31, 2019. DE 54. The matter is ripe for decision. For the reasons stated below, the undersigned recommends that the District Court grant the Motion, and dismiss

---

[1] The District Court permitted Plaintiff Margaret Schultz to file a Third Amended Complaint, conditioned on the parties' agreement that the amendment would not moot out the pending Motion to Dismiss. DE 58. The Third Amended Complaint was filed on February 20, 2019, and is the operative complaint. DE 59.

the case with prejudice.

## FACTS

The following constitute the material facts alleged in the Third Amended Complaint.[2] On May 25, 2017, Plaintiff Margaret Schultz ("Schultz") saw a flight listed for $197.00 on Defendant American Airlines, Inc.'s ("American"), website, aa.com. ¶¶ 20, 30. Desiring to purchase a ticket and willing to pay that price, Schultz "clicked" on the relevant link and proceeded through a series of screens: (1) "Destination," (2) "Choose Departure Flight," (3) "Choose Return Flight," (4) "Trip Summary," (5) "Passengers," and (6) "Choose Your Seat," entering information where requested. ¶ 17. Schultz proceeded to the final, "Review and Pay" Screen. Reviewing this screen and being satisfied that it included the information she had seen and selected on preceding screens—flight number, dates and locations of arrival and departure, and price—Schultz entered her credit card information and clicked "Pay now." ¶ 62. Immediately thereafter, American informed Schultz that it could not issue the ticket for $197.00 because the price had risen to $297.00. ¶ 63, 65. Forced to start over, Schultz eventually purchased the ticket using frequent flier points. ¶ 65.

## LEGAL CLAIMS

Schultz filed this class action suit seeking damages for breach of contract arising out of American's failure to issue tickets for their advertised fares. On October 11, 2018, the District

---

[2] For purposes of this Motion, the Court accepts all well-pled factual allegations in the Third Amended Complaint as true and evaluates all plausible inferences derived from those facts in favor of the Plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

Court adopted the undersigned's Report and Recommendation, recommending granting American's Motion to Dismiss the initial Complaint for failure to state a claim, and permitting Schultz the opportunity to amend.  DE 31, 33.  Schultz thereafter filed the Third Amended Complaint that is the subject of this Report and Recommendation.  Attached to and incorporated in the Third Amended Complaint are screenshots of American's online booking process.  Though not exact replicas, the screenshots are "substantively identical" to the screens displayed to Schultz. ¶ 20. The "Review and Pay" screenshot displays Schultz's selections, including flight number, airline name, departure and arrival airports, departure and arrival times, travel time, type of aircraft, seat, and class. ¶ 48.  Also attached to the Third Amended Complaint is American's "Conditions of Carriage," the first line of which informs the customer that "Your *ticket* and the following Conditions of Carriage constitute the contract between you, the passenger, and American Airlines, Inc. ("American") and apply to all transportation provided by American. . . ." (emphasis added.)  DE 59-9 at 1.

American moves for dismissal under Rule 12(b)(6) for failure to state a plausible claim for breach of contract.  American also argues that the Airline Deregulation Act ("ADA") preempts the breach of contract claim because it relates to American's price and ticket services, and does not constitute a voluntary commitment.  Failure to preempt the claim, American asserts, would frustrate the purpose of the ADA to "promote efficiency, innovation, and low prices in the airline industry through maximum reliance on competitive market forces and on actual and potential competition."  *See Retail Clerks Int'l Assn. v. Schermerhorn*, 375 U.S. 96, 103 (1963) ("The purpose of Congress is the ultimate touchstone in every preemption case.").  The undersigned agrees with American that the ADA preempts Schultz's claim, and recommends dismissal with prejudice.  *See Cavalieri v. Avior Airlines C.A.*, No. 17-cv-22010, 2019 WL 1102882, at *5 (S.D.

Fla. Feb. 15, 2019) (J. Louis) (concluding that "language on an airline's webpage referring to the passenger's obligation to pay a specific purchase price alone does not create a voluntary contractual obligation by the airlines"); *see also Cox v. Spirit Airlines, Inc.*, 340 F. Supp. 3d 154, 160 (E.D.N.Y. 2018) ("The Supreme Court has held twice that the ADA preempts state law claims rooted in fraud.").

## DISCUSSION

### 1. Motion to Dismiss Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); see also *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central

to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "Where the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1341 (S.D. Fla. 2010) (J. Dimitrouleas); *see also Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1354 n. 2 (S.D. Fla. 2012) (J. Cohn) (noting that "when there is a conflict between a pleading and an exhibit to a pleading, the exhibit controls").

**2. Breach of Contract**

To succeed on a breach of contract claim, a plaintiff must prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *De La Flor v. Ritz-Carlton Hotel Co., L.L.C.*, No. 12-23689, 2013 WL 1874618, at *4 (S.D. Fla. 2013) (J. Huck) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). "[W]hether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (citing *Acumen Constr. Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. Dist. Ct. App. 1993)). A complaint seeking to establish the existence of a contract must plead: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of essential terms." *Kolodziej*, 774 F.3d at 740. A plaintiff thus cannot prevail on a breach of contract claim without first alleging the existence of an offer. "'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *De La Flor*, 2013 WL 1874618, at *4 (citing Restatement (Second) of Contracts § 24 (1981)).

Schultz's theory of contract formation is that "[u]pon Plaintiff's viewing of Screen 6, American had manifested to Plaintiff that it was willing to enter into a bargain" because "[i]t had

5

offered airfare for a specified price under well-delineated terms that constitute all terms essential to air travel with a common carrier." ¶ 61. Such specificity "created a reasonable expectation" in Schultz, as an objectively reasonable consumer, that American had a willingness to enter into a contract with her on those terms ¶ 72. Schultz accepted American's offer by entering her payment information and clicking "Pay Now." ¶ 74. American refused to issue the ticket, and Schultz incurred damages as a result. ¶ 84.

The Court need not resolve the breach of contract claim because, for the reasons discussed below, that claim is preempted. *Cavalieri* 2019 WL 1102882, at *2. As Judge Louis explained in *Cavalieri*, "[s]ince the Court is persuaded that Plaintiff's claims are preempted by the federal Airline Deregulation Act . . .it need not reach the sufficiency of Plaintiff's factual allegations nor Plaintiff's request for class certification."

### 3. Preemption

The ADA preempts Schultz's breach of contract claim. "Preemption is the power of federal law to displace state law substantively." *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 18-20136, 2018 WL 1701969, at *5 (S.D. Fla. 2018) (J. Altonaga) (citing *Geddes v. Am. Airlines, Inc.*, 321 F. 3d 1349, 1352 (11th Cir 2003)). "The ADA contains a preemption provision to 'ensure that the States would not undo federal regulation with regulation of their own.'" *Id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). The ADA's preemption clause provides that "a State, political subdivision of a State, or political authority. . . may not enact or enforce a law, regulation, or other provision having the force and effect of a law related to a price, route, or service of an air carrier. . . ." *Id.* (citing 49 U.S.C. § 41713(b)(1)).

Courts interpret the ADA's preemption clause as having broad reach. *See Morales*, 504 U.S. at 383. As the Supreme Court explained in *Morales*, the ADA preempts state enforcement

actions having a connection with or reference to airline rates, routes, or services. *Id.* at 384. The ADA also preempts common law claims having a connection with rates, routes or services. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (stating that "the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can be by a state statute or regulation").

To support its position, American places great reliance on *Morales*. In *Morales*, the Supreme Court declined to enforce guidelines issued by the National Association of Attorneys General ("NAAG") regulating airfare advertising and requiring disclosure of terms, restrictions, and availability. *Morales*, 504 U.S. at 388. The Supreme Court reached this determination even though the NAAG guidelines did not create new law, but "merely explain[ed] in detail how existing state laws apply to airfare advertising and frequent flyer programs." *Id*. Because the guidelines "related to" price and had the "forbidden significant effect" of restricting an airlines' ability to advertise its rates, routes, or services, the claim was preempted.

American argues that *Morales* compels dismissal of the Third Amended Complaint because Schultz seeks to impose on American an obligation to provide airfare at a particular price. In response, Schultz attempts to distinguish *Morales* on the ground that *Morales* does not involve a breach of contract claim—a claim which the Supreme Court has determined to be exempt from the ADA's preemption provision if seeking to enforce a voluntary commitment. *See Am. Airlines v. Wolens*, 513 U.S. 219, 228 (1995) (holding that the ADA's preemption provision does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own"). The ADA does not preempt breach of contract claims because "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement

7

of any law, rule, regulation, standard, or other provision having the force and effect of law." *Id*. The "distinction between what the State dictates and what the airline itself undertakes confines Courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233. Reliance on state law to enforce a breach of contract action is only permitted where state law is expressly incorporated into the parties' agreement. *See Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) ("[W]hen a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the ADA."); *see also In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 566 (N.D. Tex. 2005) (breach of contract claim not preempted because "the laws that American maintains are external to the contract are expressly incorporated into it").

Consequently, "[f]or a law to be expressly pre-empted by the ADA, a state must enact or enforce a law that relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1259 (11th Cir. 2003) (internal quotations and citation omitted). The Supreme Court made clear in *Morales* that restrictions on fare advertising have such effect. *See Morales*, 504 U.S. at 388 ("[I]t is clear that state restrictions on fare advertising have the forbidden significant effect upon fares" because "[a]dvertising serves to inform the public of the . . . prices of products and services, and thus performs an indispensable role in the allocation of resources.").

Here, the parties do not dispute that Schultz's claims relate "to a price, route, or service of an air carrier." *See Morales*, 504 U.S. at 389 ("Price advertising surely 'relates' to price."). Instead, the parties disagree as to whether Schultz's breach of contract claim seeks to impose a state-law obligation or to enforce an agreed commitment. In moving for dismissal, American asserts that the ADA preempts the breach of contract claim because Schultz is not seeking to

8

enforce a voluntary agreement, but instead is asking the Court "to create a new, enforceable state law right . . . to purchase a particular flight at a particular price once American advertises it on its website." According to American, preemption is required because Schultz's claim depends on state law to "ripen" the offer to form a contract, and without a preexisting contract to enforce, preemption applies.

Because Schultz's breach of contract claim clearly satisfies the "related to" test, preemption applies unless the claim falls within the *Wolens* exception. This point is where Schultz's claim fails. As best the Court can discern, Schultz attempts to satisfy this requirement by broadly reading *Wolens* to permit all breach of contract claims unless resolution of such claim results in enlarging or expanding the agreement's terms. Schultz's reasoning is flawed, however, because it assumes the existence of the contract, the formation of which is in dispute. Schultz's reasoning also fails to account for the critical distinction between *Wolens* and the instant case. Significantly, in *Wolens*, the plaintiff was issued a ticket and the existence of the relevant agreement was not in dispute. As a result, in *Wolens* there was less concern that the airline would be required to honor an agreement to which it had not expressly assented. *Wolens* is consistent with the deregulatory purpose of the ADA, whereas the breach of contract claim Schultz alleges is not. *See Miller v. Delta Airlines, Inc.*, No. 4:11-CV-10099, 2012 WL 1155138, at *3 (S.D. Fla. Apr. 5, 2012) (J. King) (preempting breach of contract claim seeking reimbursement for lost baggage because "[p]ermitting this claim to move forward as plead[ed] would [ ] impermissibly sanction regulation" of the airlines' ability to advertise their services, "thereby offending the stated purpose of the Deregulation Act"); *see also Cox*, 340 F. Supp. 3d at 161 ("Fraud claims premised on the imposition of fees including whether and how much fees would be charged—directly relates to the prices imposed by air carriers. As dictated by the Supreme Court, state laws and provisions cannot be applied to require airlines to

9

advertise, market, or make particular disclosures regarding fees, even under laws governing fraud.").

Schultz's breach of contract claim is preempted because its adjudication necessitates consulting state law to "enforce" a "contract" that would otherwise not exist. The need for state law to resolve this claim is apparent in Schultz's theory of assent. Schultz alleges that the terms displayed to her on the "Review and Pay Screen" were sufficiently certain and specific to manifest American's "willingness to be bound," and lead an objectively reasonable viewer to believe that she could contract with American on those terms by entering valid payment information and clicking "Pay Now." Notably, the Third Amended Complaint acknowledges that American did *no*t intend to honor the price term displayed to Schultz. *See* ¶ 15 ("To maximize profitability, American hires computer engineers to manipulate flight prices by tracking consumer behavior on its website and changing prices on consumers whom American learns will pay a higher price based on browsing histories and other characteristics"); *see also* ¶ 71 ("American's breach of its contract with Plaintiff for the $197 ticket is part of a systematic and purposeful effort by American to dishonestly lure customers with contracts it knows it cannot honor, then fatten its coffers after the consumer—having already accepted the contract at a lower price—is forced to pay more for the same service"). Conceding that American did not expressly assent to be bound by the terms she seeks to enforce, Schultz nonetheless argues that American is bound because state law *imputes* an intent to American based on an "objective standard of assent." *See Kolodziej*, 774 F.3d at 742 (explaining that pursuant to Florida's "objective standard of assent," "the law *imputes* to a person an intention corresponding to the reasonable meaning of his words and acts"); *see also Black's Law Dictionary* 369 (To "impute" is "[t]o ascribe or attribute; to regard (usu. something undesirable) as being done, caused or possessed by"). Using state law to "impute" to American the requisite intent

to contract regarding ticket price is precisely the type of state-imposed obligation that the ADA prohibits, especially as here where American makes clear that its "Conditions of Carriage" and *ticket* constitute the contract between a passenger and American. Schultz's allegation that she was not issued a ticket distinguishes her case from those in which Courts have deemed the *Wolens* exception to apply. *See e.g. Wolens*, 513 U.S. at 219 (permitting claim for breach of express provision of frequent flyer agreement); *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057 (9th Cir. 2017) (permitting claim for breach of express provision of terms of transportation agreement). "Unlike in *Wolens*, where the Supreme Court exempted a breach of contract claim stemming from the terms of a frequent flier program, the express terms of the provision at issue [here] 'relates to' the airlines pricing," and is therefore preempted. *Cavalieri*, 2019 WL 1102882, at *5. Absent American's express assent, there is no preexisting contract. *See Kolodziej* at 746 ("With no assent, there no actionable offer, with no offer, there is no enforceable contract"). Accordingly, Schultz's claims are preempted as a matter of law, and further amendment would be futile.

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the District Court GRANT the Motion to Dismiss with prejudice.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 27th day of March, 2019, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE