## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-80633-CIV-ALTMAN/Brannon

**MARGARET SCHULTZ,** individually,
and on behalf of a putative class,

    Plaintiff,

v.

**AMERICAN AIRLINES, INC.**,

    Defendant.
_____/

## ORDER

On May 14, 2018, the Plaintiff, Margaret Schultz ("Schultz"), filed a putative class action against American Airlines, Inc. ("AA"), alleging breach of contract and unjust enrichment [ECF No. 1]. The operative complaint, now in its third iteration ("TAC") [ECF No. 59], contains a single breach of contract claim and is the subject of AA's Motion to Dismiss ("Motion") [ECF No. 38], filed on November 16, 2018.[1] This Court referred the Motion to the Magistrate Judge for a Report & Recommendation ("R&R") [ECF No. 49]. On March 27, 2019, after oral argument, and with the benefit of briefing by both parties, the Magistrate Judge issued an R&R recommending that the Plaintiff's claims be dismissed with prejudice [ECF No. 61].

Schultz timely filed her objections to the R&R [ECF No. 63]. AA filed its response [ECF No. 66], and Schultz filed a reply [ECF No. 69]. When, as here, a party timely and properly objects to a magistrate judge's recommended "disposition," the district court must review that disposition

---

[1] Although AA's Motion was filed prior to the filing of the TAC, the parties agreed that AA did not need to re-file its Motion because AA's arguments for dismissal have not meaningfully changed [ECF No. 58].

*de novo*. FED. R. CIV. P. 72(b)(3).

## Background

The Court adopts the R&R's recitation of the facts as alleged in the TAC. R&R at 2. In short, on May 25, 2017, the Plaintiff saw a flight listed for $197.00 on AA's website. When she "clicked" on the corresponding link to pay—and after proceeding through a series of screens that required her to enter her passenger and credit card information—AA's website informed her that the price of the ticket had increased to $297.00. *Id.*

## The Parties' Arguments

This matter turns, in part, on the Court's application of the Airline Deregulation Act ("ADA") to the Plaintiff's breach of contract claim. On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and must accept the plaintiff's factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). While the Court "must make reasonable inferences in Plaintiffs' favor," it need not "draw Plaintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "Likewise, 'unwarranted deductions of fact' are not admitted as true in a motion to dismiss." *Id.* (quoting *So. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, n. 10 (11th Cir.1996)).

AA's central argument is that the TAC should be dismissed for failure to state a claim. Specifically, AA says that, as a matter of law, the parties never entered into a valid contract for a $197.00 ticket—and that, as a result, AA could not have breached that non-existent contract. Motion at 13-17. AA also contends that the ADA preempts the Plaintiff's breach of contract claim. *See generally* Motion at 9-13. In support of this position, AA argues that the Plaintiff's claim would require the Court to "create a new, enforceable state law right . . . to purchase a particular

flight at a particular price once American advertises it on its website." *See* Def. Reply [ECF No. 16 at 2]. And, because this new state law right would obligate AA's behavior with respect to "price and ticket services," AA says the Plaintiff's breach of contract claim does not meet the "voluntary commitment" exception the Supreme Court recognized in *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). Def. Mot. at 15, 17.

Schultz unsurprisingly disagrees. In her account, AA offered her an airline ticket for $197.00 and then reneged on that offer once she clicked "pay now." Pl. Resp. at 10-21 [ECF No. 42]. Moreover, Schultz adds, citing the Supreme Court's holding in *Wolens*, the ADA does not preempt her state-law breach of contract claim. *Id.* at 8.

## The Law

A breach of contract claim requires a plaintiff to prove (1) the existence of a contract; (2) a material breach of that contract; and (3) damages stemming from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). In Florida, a plaintiff must plead the existence of a contract by showing (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *De La Flor v. Ritz-Carlton Hotel Co.*, No. 12-23689-CIV, 2013 WL 1874618, at *4 (S.D. Fla. May 1, 2013), *aff'd*, 556 F. App'x 938 (11th Cir. 2014). The existence of a valid contract is a question of law for the Court. *Id.* (citing *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014)).

## Preemption

Congress enacted the ADA in 1978 to deregulate domestic air transportation. *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005). The ADA preempts state-law claims, statutes, or regulations "relating to rates, routes, or services of any air carrier." *Morales v. Trans World Airlines*, 504 U.S. 374, 378-79 (1992). For a state "obligation" to be expressly

preempted by the ADA, a state must "enact or enforce a law that relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466 (11th Cir. 1998) (citation omitted); *see also Nw., Inc. v. Ginsberg*, 572 U.S. 273, 286 (2014) (finding that an implied covenant of good faith and fair dealing is a state-imposed obligation preempted by the ADA).

The Supreme Court has, however, carved out a narrow exception to the ADA's preemption provisions for suits alleging that an airline breached its obligations under a contract. *Koutsouradis*, 427 F.3d at 1343 (citing *Wolens*, 513 U.S. at 228). As the *Wolens* Court noted, the "terms and conditions airlines offer and passengers accept are privately ordered obligations" that are not preempted by the ADA. *Wolens*, 513 U.S. at 228-29. This limit on the ADA's preemptive scope allows state-law claims against airlines for "routine breach-of-contract claims" because analyzing these claims "simply holds the parties to their agreements." *Wolens*, 513 U.S. at 220. The *Wolens* exception, then, permits state-law suits against airlines *only* where an airline has "dishonored a term the airline itself stipulated" to, and "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 232-33. Because the TAC purports to raise a fairly routine breach of contract claim—that is, that the airline "dishonored a term" it had "stipulated" to—the Court finds that Schultz's breach of contract claim is not preempted by the ADA.[2]

---

[2] AA argues, and the R&R concluded, that *Wolens*' "voluntary commitment" exception should not apply in this case because, unlike in *Wolens*, AA here disputes that it ever entered into a contract with Schultz in the first place. R&R at 3. This is a distinction without a difference. The TAC specifically alleges that AA breached its contractual obligations to Schultz. TAC ¶¶ 19, 65, 67-85. That AA disputes an element of this breach of contract claim (specifically, whether a contract existed) does not materially distinguish this case from *Wolens*—where AA likewise contested an element of the plaintiffs' breach of contract claim (namely, whether a material breach had occurred). And while it is true that questions of offer, acceptance, and assent naturally implicate state-law policy objectives, the *Wolens* Court had little difficulty establishing a broad breach of

4

**The "Contract"**

The Plaintiff concedes that AA refused to issue her a ticket—or enter into a contract—for $197.00. TAC ¶ 15, 63. Instead, she argues that AA's advertisement of a $197.00 ticket was a firm offer she was entitled to accept. *Id.* ¶ 19, 23, 75. AA, for its part, argues that, under well-established principles of contract law, its advertisement constituted, not an offer, but an invitation to negotiate. Motion at 18.

It is axiomatic that a "manifestation to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981). Under Florida law, "[t]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Izadi v. Machado (Gus) Ford, Inc.*, 550 So. 2d 1135, 1139 (Fla. 3d DCA 1989). And courts generally consider it *unreasonable* for a person to believe that an advertisement constitutes a binding offer. *See Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988). For this reason, advertisements are "not ordinarily intended or understood as offers to sell." RESTATEMENT (SECOND) OF CONTRACTS § 26 cmt. c. *See also Armour Group, Inc. v. Labock*, No. 11-61991, 2012 WL 12837289, at *7 (S.D. Fla. 2012) (finding that an advertisement typically constitutes a solicitation to bargain—and not an offer); *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 123 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88

---

contract claim exception that operates irrespective of competing policy choices. *Wolens*, 513 U.S. 219 at n. 8 ("Because contract law is not at its core 'diverse, nonuniform, and confusing,' we see no large risk of nonuniform adjudication inherent in '[s]tate-court enforcement of the terms of a uniform agreement prepared by an airline and entered into with its passengers nationwide.'") (citation omitted). In this respect, the Court can find no justification, either in *Wolens* or elsewhere, for the proposition that a challenge to a contract's formation should be treated differently, for ADA purposes, from a challenge to the same contract's breach.

(2d Cir. 2000) ("An advertisement is not transformed into an enforceable offer merely by a potential offeree's expression of willingness to accept the offer through . . . completion of an order form."); *Mesaros v. U.S.*, 845 F.2d 1576, 1580 (Fed. Cir. 1988) ("The great weight of authority" suggests that order forms are "mere notices and solicitations for offers which create no power of acceptance in the recipient."). The only exception to this general rule arises when an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation." *Kolodziej*, 774 F.3d at n. 11.

And this makes sense. An airplane cannot accommodate every person who might want a seat on a particular flight. As with any commodity, there is an inherent limitation to the number of seats available for sale on any given flight—or at any given price.[3] As the Federal Circuit Court of Appeals has said in a different, but related, context:

> A basic rule of contracts holds that whether an offer has been made depends on the objective reasonableness of the alleged offeree's belief that the advertisement or solicitation was intended as an offer. *Generally, it is considered unreasonable for a person to believe that advertisements and solicitations are offers that bind the advertiser. Otherwise, the advertiser could be bound by an excessive number of contracts requiring delivery of goods far in excess of amounts available.*

*See Mesaros*, 845 F.2d at 1580 (emphasis added). The plaintiffs in *Mesaros* were coin collectors who sued the United States Mint for failing to send them certain commemorative coins they had ordered. Demand for the coins had "far exceeded the Mint's expectations," as a result of which the Mint had been unable to satisfy every order it received. *Id.* at 1578. The *Mesaros* Court held that the order forms the plaintiffs had filled out were not offers susceptible of acceptance. *Id.* at 1581. To the contrary, "[s]ince the coins could be paid for with checks, money orders, or credit cards, it

---

[3] Schultz does not dispute the self-evident proposition that the price AA charges for any given seat naturally depends upon the principles of supply and demand: All things being equal, as customers buy up available seats, the price of any remaining seats tends to rise.

6

would have been impossible for the Mint to have processed the sales on a first-come, first-served basis." *Id*.

In an effort to show that AA's advertisement was an offer because it left "nothing open for negotiation," the Plaintiff notes that the screens she navigated through included "clear" and "definite" information with respect to a number of salient details—among these, flight times, airport locations, travel routes, dates, and baggage and cancellation policies. Pl. Resp. at 14. But the screens also included two critical elements that either left the advertisement "open for negotiation" or else made clear that the online order form did not constitute an offer: (1) a lack of any commitment by AA as to the exact price the Plaintiff would have to pay for her seat—or even whether, when it came time to pay, a seat would be available at all; and (2) AA's specific disavowal of any notion that the order form constituted a contract.

With respect to ticket price and seat availability, the TAC notes that AA's fares vary based, among other things, on the number of seats available at a particular price point. TAC ¶ 25. Indeed, the TAC includes a screen capture of a sample pricing matrix for a flight the Plaintiff contends is substantially similar to the one she tried to book on May 25, 2017. *Id*. The matrix shows three different price points for each available flight and plainly indicates that, for some flights, there is a limit to the number of seats available at each price. *Id.* Within the "Main Cabin" column, for instance, the pricing matrix shows only "2 seats left" for the price displayed on the screen. *Id*. Because nothing would prevent another consumer from purchasing one (or both) of these seats, the Plaintiff cannot—and does not—deny that, by the time she clicked on the "pay now" button, AA could have sold out of the seats it had advertised just moments before.[4] In this scenario, the

---

[4] Nor does Schultz allege that she somehow "reserved" her ticket—thereby preventing other customers from purchasing the seat as she navigated through the order screens.

7

Plaintiff would have been left with no ticket at all—irrespective of price.

This outcome, it seems clear, would not have resulted in any breach by AA of its "contractual" obligations, and Schultz does not persuasively explain why the lesser evil at issue here—a seat at a slightly higher price—should be treated any differently. Put another way, just as, in the time it took Schultz to complete her online order form, AA could have sold her seat to someone else, AA was fully entitled to alter the price of Schultz's ticket on the ground that, prior to her purchase, the inventory of available seats on Schultz's chosen flight had changed. Because, in short, the availability of Schultz's seat—no less than the price Schultz would have to pay for that seat—was subject to the vagaries of supply and demand, Schultz has failed to show that AA's advertised fare was "clear, definite, and explicit, and le[ft] nothing open for negotiation." *Kolodziej*, 774 F.3d at n. 11.

Second, the "final screen" Schultz says she saw just before she clicked "pay now" specifically and expressly incorporated AA's "Conditions of Carriage," which appeared in a "clickable" link *immediately adjacent* to the advertised ticket price. [ECF No. 59-9]. And the very first sentence of those "Conditions of Carriage" explicitly admonished Schultz that "[y]our *ticket* and the following Conditions of Carriage constitute the *contract* between you, the passenger, and American Airlines, Inc. . . . ." *Id*. at 1 (emphasis added). In other words, as the TAC makes clear, a passenger's contract with AA is composed of (1) the issued ticket and (2) the terms and conditions set out in the "Conditions of Carriage." Schultz concedes that AA never accepted her money or issued her a ticket—two facts that, per the express terms of the "Conditions of Carriage," belie her contention that the order form she filled out constituted her acceptance of an offered contract. *Cf. Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1373 (11th Cir. 2005) (finding an offer where document in question made clear that it was a contract, established the terms of the

8

contract, and explained the means by which the contract could be accepted).

The allegations of the TAC are thus pellucid: AA advertised a kind of seat on a particular flight at a particular price—but only for a limited time and subject to inherently indefinite terms. Because this advertisement left open the possibility—reified here—that, prior to Schultz's purchase, some other consumer might enter the fray and either buy all of the remaining seats or else alter the price of each seat by purchasing some of them, Schultz's "contention . . . that [she] reasonably believed the [website] was intended as an offer" appears "unreasonable as a matter of law." *Mesaros*, 845 F.2d at 1581.

All of that said, the record contains little evidence, one way or the other, on some of the inferences the Court has made in this Order. In this respect, the Court notes that the discovery deadline has passed, the dispositive motions deadline is tomorrow, and the Court's adjudication of these legal questions would benefit from a more developed evidentiary record on, among other things, the operation of AA's pricing matrix, the number of consumers who purchased tickets for Schultz's flight while she was navigating through the order screens, whether Schultz's chosen seat could be reserved or otherwise held before she clicked "pay now," and the specific information AA conveyed to Schultz before she clicked "pay now." As such, AA's Motion to Dismiss [ECF No. 38] is **DENIED without prejudice**.

## Conclusion

The Court has conducted a *de novo* review of the record, the Report, and the the parties' filings, and has otherwise carefully reviewed the applicable law. For the foregoing reasons, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Magistrate Judge's R&R [ECF No. 61] is **NOT ADOPTED**.

2. The Defendant's Motion to Dismiss [ECF No. 38] is **DENIED without prejudice**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 9th day of July 2019.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record